IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| LOUIS DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 624-024 |
| | ) | |
| BRENDAN MURRAY, Correctional Officer, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Wilcox State Prison in Abbeville, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought pursuant to 42 U.S.C. § 1983, concerning events alleged to have taken place at the Emanuel County Jail ("ECJ") in Swainsboro, Georgia. Plaintiff did not respond, and therefore Defendant's motion is deemed unopposed. See Loc. R. 7.5. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's unopposed motion for judgment on the pleadings be **GRANTED**. (Doc. no. 21.)

**I.  BACKGROUND**

    **A.  Procedural History**

On May 16, 2024, Plaintiff filed the instant case against Mr. West, the Warden of ECJ, and Brendan Murray, a Correctional Officer at ECJ, alleging he was assaulted by Defendant Murray while in custody. (Doc. no. 1, pp. 2-5.) Plaintiff stated he filed a grievance concerning the incident. (Id. at 7.) Pursuant to screening conducted under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), United States District Judge J. Randal Hall dismissed Defendant West. (Doc.

nos. 6, 11.) The Court permitted Plaintiff's excessive force claim to proceed against Defendant Murray. (Doc. no. 9.) Defendant Murray now moves for judgment on the pleadings, arguing Plaintiff failed to exhaust available administrative remedies, as required by 42 U.S.C. § 1997e(a), because his grievance was untimely. (See generally doc. no. 21.)

### B.  Complaint Allegations

With respect to Defendant Murray and the excessive force claim raised against him which remains in the case, Plaintiff alleges the following facts in his complaint. During a mealtime on January 3, 2024, Defendant assaulted Plaintiff in his cell at ECJ. (Doc. no. 1, pp. 4-5.) During the assault, Defendant choked and punched Plaintiff, tossed Plaintiff around his cell, threw Plaintiff to the ground, and dragged Plaintiff across the floor. (Id. at 3, 5.) A female correctional officer witnessed the assault and yelled at Defendant to stop. (Id.) Following the incident, Plaintiff filed a grievance at ECJ. (Id. at 7.) Plaintiff received a receipt showing Warden West acknowledged the grievance but failed to investigate it. (Id. at 8.) Warden West also allowed Defendant Murray to continue working at ECJ following the incident, where Officer Murray continued to assault inmates. (Id. at 4.) Plaintiff suffered injuries to his right collar bone, lower back pain in his spinal area, and mental distress. (Id. at 5.) Plaintiff seeks monetary damages and equitable relief. (Id.)

### C.  Plaintiff's Relevant Grievance History

In support of the motion to dismiss, Defendant produced the declaration of Major West Bedgood, the current Jail Administrator at ECJ. (Doc. no. 21-1, pp. 1-3, "Bedgood Decl.") Major Bedgood served in this capacity at the time of the events alleged by Plaintiff and, as Jail Administrator, is responsible for the collection and investigation of all grievances pursuant to the ECJ Grievance Procedure. (Bedgood Decl. ¶ 5.) Major Bedgood is familiar with ECJ

policies, including the Grievance Procedure, which "is the mechanism for a prisoner to make the Sheriff and his staff aware of possible deficiencies with respect to conditions of confinement within [ECJ]." (Id. ¶¶ 3-4.)

Major Bedgood identified only one grievance Plaintiff filed while at ECJ, dated January 15, 2024, and which alleged Defendant assaulted him on January 3, 2024. (Id. ¶ 14; see also id. at Ex. B.) The grievance was untimely because Plaintiff did not file it within forty-eight hours of the event or condition giving rise to the grievance. (Bedgood Decl. ¶¶ 6, 15; id. at Ex. A, "GP," p. 2, § IV(b)(i)(a).) Plaintiff was transferred out of ECJ custody and to another facility two days after he submitted the untimely grievance, and thus did not receive a response to his untimely grievance, as the Grievance Policy provides an initial response to a grievance will be provided within five days of the grievance being filed. (Bedgood Decl. ¶¶ 7, 16; GP §§ IV(a)(iv) & (b)(i)(b).)

## II.     DISCUSSION

### A.     The Legal Framework

As a motion for judgment on the pleadings under 12(c) and a motion to dismiss under 12(b)(6) are almost identical in form and relief, courts apply the same legal standard in assessing both motions. See Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc., 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016) ("The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6).") (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).

Where, as here, a defendant argues the plaintiff failed to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version

as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion for judgment on the pleadings should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the

4

underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016). Here, Plaintiff makes no allegation or arguments under the first two scenarios outlined in Ross. Plaintiff contends in the complaint he was able to utilize the grievance procedure to file a grievance. (Doc. no. 1, p. 7.) To the extent Plaintiff argues prison officials failed to give him an appeal form or inform him of the appeal procedure, (see id.), the Court addresses that allegation below.

5

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotations omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159. The Eleventh Circuit has repeatedly ruled a prisoner plaintiff must *properly* use all available administrative steps available in order to satisfy the PLRA's exhaustion requirement. Varner v. Shepard, 11 F.4th 1252, 1260-61 (11th Cir. 2021) (collecting cases).

**B.    The Administrative Grievance Procedure**

As part of the Bedgood Declaration, Defendant provided a copy and explanation of the applicable ECJ Grievance Procedure, which became effective on January 1, 2021. (Bedgood Decl. ¶¶ 3-11 & GP.) The grievance procedure has three steps: (1) Original Grievance, (2) Chief Deputy Appeal, and (3) Sheriff Appeal. (GP § IV.) The administrative remedies procedure commences with filing a Grievance form with any staff member. (Id. § IV(a)(vii).) The inmate has forty-eight hours from the "event or condition giving rise to the grievance" to file the grievance. (Id. § IV(b)(i)(a).) The jail administrator collects and investigates all grievances and is also responsible for providing the initial response to the inmate. (Id. § IV(a)(v) & (vi).) The jail administrator is required to provide an initial response to the inmate within five days of the filing of a grievance unless the inmate has been notified and waived their right to a timely response. (Id. § IV(b)(i)(b).)

If the inmate is not satisfied with the jail administrator's initial response to the grievance, they may proceed to step two of the grievance process and file an appeal with the

6

Chief Deputy. (Id. § IV(c)(i).) The inmate has forty-eight hours to file an appeal to the Chief Deputy from receipt of the jail administrator's initial response to the grievance. (Id. § IV(c)(ii).) The Chief Deputy then has forty-eight hours after receipt of the grievance appeal to response to the appeal. (Id. § IV(c)(iii).)

If the inmate is not satisfied with the Chief Deputy's response to their grievance appeal, they may proceed to step three of the grievance process and file an appeal with the Sheriff. (Id. § IV(c)(iv).) The inmate has forty-eight hours from the date he receives the Chief Deputy's response to appeal to the Sheriff. (Id.) The Sheriff has forty-eight hours after receipt of the grievance appeal to deliver a final decision to the inmate. (Id. § IV(c)(v).)

### C.   Plaintiff's Failure to Exhaust

In his complaint signed on May 1, 2024, Plaintiff alleges Defendant assaulted him in his cell at ECJ on January 3, 2024. (Doc. no. 1, pp. 4-5, 11.) Plaintiff acknowledges there is a grievance procedure at ECJ and filed an initial grievance prior to filing this lawsuit. (Id. at 6-7.) Plaintiff alleges he did not file an appeal after the warden failed to investigate his grievance because he was not given an appeal form, nor was he informed how to file an appeal. (Id. at 7.) Under step one of Turner, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate, and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and the Defendant has the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Off., 23 F.4th 1299, 1307 (11th Cir. 2022). As explained below, the Court concludes Defendant has carried the burden to show Plaintiff did not properly exhaust his administrative remedies.

Defendant has shown through the Bedgood Declaration that Plaintiff filed only one grievance with respect to his assault. (Bedgood Decl. ¶¶ 12-16 & Ex. B.) Plaintiff filed the grievance on January 15, 2024, twelve days after the alleged assault and well outside of the forty-eight-hour deadline set by GP § IV(b)(i)(A). (Id.) Plaintiff did not respond to the motion for judgment on the pleadings or contest any information contained therein.

The Court concludes Defendant has carried the burden to show Plaintiff did not exhaust his administrative remedies. In Plaintiff's original complaint, certified under Federal Rule of Civil Procedure 11, Plaintiff stated he filed a grievance on an unspecified date, received no response, and was not given an appeal form or notified of the process to appeal. (Doc. no. 1, p. 7.) Plaintiff makes no allegation he attempted to seek permission to file an untimely grievance. (See id.) The Bedgood Declaration, signed under penalty of perjury, explains Plaintiff's grievance was untimely, as it was submitted twelve days after the relevant incident. (Bedgood Decl. ¶¶ 6, 7, 15, 16; GP §§ IV(a)(iv), (b)(i)(a)-(b).)

In light of the evidence of record, the Court concludes Plaintiff did not exhaust administrative remedies because the exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules, including failing to request leave to file an untimely grievance appeal or assert good cause for failing to timely file a grievance. See Bryant, 530 F.3d at 1379 (rejecting argument that grievance procedure exhausted with untimely filing where prisoner never sought good cause waiver); Johnson, 418 F.3d at 1158-59 (emphasizing Congressional intent to allow prison officials first opportunity to address grievance issues and refusing to allow untimely grievance to satisfy exhaustion requirement where prisoner "did not request leave to file an untimely administrative grievance and did not assert good cause for his failure to file a timely grievance

before he filed his federal complaint"); see also Varner, 11 F.4th at 1264 ("Because Varner did not file a timely grievance and because GDC did not waive the procedural defects in the untimely grievances that Varner did file, Varner failed to satisfy the PLRA's exhaustion requirement."); Myton v. Moye, Civ. Act. No. 619-032, 2021 WL 4978670, at *2 (S.D. Ga. Sept. 17, 2021) (rejecting exhaustion argument where prisoner argued in federal court, he had good cause to file untimely grievance but never presented any such argument to GDOC or requested waiver of time limit when grievance filed), *adopted by* 2021 WL 4979407 (S.D. Ga. Oct. 26, 2021).

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95. Similarly, here, Plaintiff should not be allowed to bypass the administrative process by simply presenting an untimely grievance.

To the extent Plaintiff's complaint allegations suggest the grievance appeal process was unavailable to him, such an argument fails. Any possible failure on the part of ECJ personnel to make grievance appeal procedures available does not excuse Plaintiff's untimely filing of

9

the grievance in the first place. Because the original grievance process was available to Plaintiff, but he failed to properly exhaust by filing his grievance outside the forty-eight-hour window pursuant to the ECJ Grievance Policy, and he provides no explanation or good cause to demonstrate his untimeliness should be excused, he failed to properly exhaust his administrative remedies.

Therefore, based on the above discussion, the Court finds Defendant has met his burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit because his grievance was untimely. Because Plaintiff did not properly exhaust his administrative remedies prior to initiating this case, the motion for judgment on the pleadings should be granted. See Bryant, 530 F.3d at 1379; Johnson, 418 F.3d at 1158-59; see also Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for judgment on the pleadings be **GRANTED**, (doc. no. 21), and this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 6th day of May, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

10